## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

PRIME MANAGEMENT
CONSULTING & INVESTMENT
SERVICES, LLC,

                **Plaintiff,**

   v.

CERTAIN UNDERWRITERS AT
LLOYD'S LONDON,
INDOOR AIR CARE, INC., and
TOTURA AND COMPANY INC.,

                **Defendants.**

        **1:07-cv-1578-WSD**

## <u>OPINION AND ORDER</u>

This matter is before the Court on the Motion to Dismiss [3] filed by

defendants Those Certain Underwriters at Lloyd's, London, Subscribing to

Certificate No. AANIG0189T ("the Underwriters"), the Motion for Leave to

Amend [11] filed by plaintiff Prime Management Consulting & Investment

Services, LLC ("Prime Management" or "Plaintiff"), and the Motion to Dismiss

[28] filed by defendant Totura and Company Inc. ("Totura").

## I.     FACTUAL BACKGROUND

Prime Management, a Georgia limited liability company, operates the Executive Inn, a hotel located in Atlanta, Georgia.  The Underwriters are a syndicate that issues insurance polices through Lloyd's, London.  The Underwriters subscribed to Certificate No. AANIG0189T issued to Prime Management for the period beginning May 21, 2005 (the "Insurance Policy").  The Insurance Policy covered damage to the building and personal property located at the Executive Inn.  Subject to its terms and conditions, the Insurance Policy provides up to $2,000,000 in property coverage, $400,000 for business personal property, and $300,000 for lost business income and expenses.

On July 9, 2005, rain and wind from Hurricane Dennis substantially damaged the sixth, seventh, and eighth floors of the Executive Inn, rendering them uninhabitable.  On July 12, 2005, Prime Management notified the Underwriters of the damage sustained and that it believed damages to the building, personal property, and lost business income were all covered under the Insurance Policy.[1]

---

[1] The parties appear to dispute most of the facts alleged in the Complaint. For the purposes of this motion, the Court is required to accept Plaintiff's factual allegations as true.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

On July 14, 2005, the Underwriters appointed Totura, a Florida company, to adjust Prime Management's loss.  Corey Danner, Totora's adjuster in Georgia, inspected the Executive Inn the same day.  Mr. Danner recommended that Prime Management retain Indoor Air Care, Inc. ("IAC"), a New York corporation, to perform water extraction and remediation on the property.  Robert Sindone, CEO of IAC, is alleged to have written on July 18, 2005 that IAC had been "appointed" by the Underwriters through their "Adjusters, Mr. Corey Danner of Totura & Company, to perform the demolition, clean-up and complete reconstruction work on the Executive Inn."  Compl. ¶ 17.  IAC arrived and began work on the Executive Inn on July 18, 2005.

On July 20, 2005, Prime Management executed an Authorization to Proceed allowing IAC to work on the Executive Inn.  The Authorization provided "that a '[f]ull estimate [was to] be submitted to insurance company & owner for their approval prior to start work [sic].'" Compl. ¶ 18.[2]

_____

[2] Plaintiff and the Defendants dispute whether IAC was required to submit invoices to Plaintiff for review before payment.  The Authorization itself, attached as an exhibit to the Parties' briefing, is almost completely illegible.  The Court assumes Plaintiff's allegations as true for the purposes of this Order.

On July 27, 2005, Sindone represented to Prime Management, "with Totura's knowledge and assent," that Prime Management's losses were covered under the Insurance Policy.  Compl. ¶ 19.

On August 1, 2005, Totura paid $200,000 to IAC under the Insurance Policy.  On August 7, 2005, Plaintiff communicated to IAC and Totura that it needed to approve all invoices in writing before payment.  Compl. ¶ 23.

On August 11, 2005, Prime Management wrote to Mr. Danner to "confirm Mr. Danner's representation that IAC was the Underwriters' "approved and assigned Contractor."  Compl. ¶ 24.  "Mr. Danner and Totura did not dispute Prime Management's summary of Mr. Danner's statements or its characterization of IAC's relationship with the Underwriters."  Id.

On October 18, 2005, IAC sent an invoice totaling $1,413,773.31 by fax to Totura.  IAC apparently did not send this invoice to Prime Management.  Id. ¶ 26.

On October 20, 2005, Prime Management's CEO, Firoz Charania, wrote to Mr. Danner and confirmed his "earlier conversation" with Mr. Danner in which Charania requested that Totura provide Prime Management with "the invoice submitted by IAC, Inc. New York for work they have done on the Property in Order to enable us to verify and approve it, as your payment to them will be under

our policy coverage."  Compl. ¶ 29.  "Mr. Charania also documented Mr. Danner's representation, made on October 20, 2005, that Mr. Danner had not received any invoice from IAC."  Id.

Sometime after October 20, 2005, Totura issued a check to Prime Management for $100,000 for damage to personal property covered under the Insurance Policy, and a check to IAC for $1,213,773.31 for services rendered to repair property damage covered under the Insurance Policy.  Totura subsequently made payment to Prime Management for the remaining $300,000 in personal property coverage.  Prime Management alleges not to have received any payment under its business income coverage.

In at least four letters from October 2005 to January 2006, Prime Management requested that Totura inform it of any payments made under the Insurance Policy to IAC.  Neither Totura nor the Underwriters informed Prime Management of the over $1.4 million already paid to IAC.

Prime Management contends IAC performed faulty work on the hotel and grossly overcharged Totura and the Underwriters for its services, thereby wrongfully depleting approximately 70% of Plaintiff's insurance coverage.

On July 6, 2007, Plaintiff filed this action.  Plaintiff alleges breach of contract against the Underwriters, breach of fiduciary duties against the Underwriters and Totura, fraud against all Defendants, and negligence against IAC.

On August 24, 2007, the Underwriters answered Plaintiff's complaint, asserted counterclaims, and moved to dismiss the breach of fiduciary duty and fraud claims.

On September 13, 2007, Plaintiff moved for leave to amend its complaint.

On November 1, 2007, Totura moved to dismiss the breach of fiduciary duty and fraud claims.

## II.    DISCUSSION

### A.    <u>The Standard on a Motion to Dismiss</u>

The law governing motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is well-settled.  "Although a plaintiff is not held to a very high standard in a motion to dismiss for failure to state a claim, some minimal pleading standard does exist."  <u>Wagner v. Daewoo Heavy Indus. Am. Corp.</u>, 289 F.3d 1268, 1270 (11th Cir. 2002), <u>rev'd on other grounds</u>, 314 F.3d 541 (11th Cir. 2002) (en banc).  "To survive a motion to dismiss, plaintiffs must do more than merely state

legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (internal citations omitted).

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true. Hishon, 467 U.S. at 73. To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007) (internal quotation marks omitted). Ultimately, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

**B.    The Standard on a Motion for Leave to Amend**

Federal Rule of Civil Procedure 15(a)[3] provides:

> A party may amend the party's pleading once as a matter
> of course at any time before a responsive pleading is

---

[3] The current version of Federal Rule 15(a), effective December 1, 2007, differs stylistically from the prior version quoted here. The Court analyzes Plaintiff's Motion for Leave to Amend under Rule 15(a) as it existed when the Motion was filed.

served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Prime Management filed its motion for leave to amend after the Underwriters answered the original Complaint, thus leave of Court is required to amend. Generally, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>accord</u> <u>Bryant v. Dupree</u>, 252 F.3d 1161, 1163 (11th Cir. 2001) ("Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.") (internal quotation marks omitted). A court should not deny a motion for leave to amend unless it has a "justifying reason" to do so, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of the amendment." <u>Foman</u>, 371 U.S. at 182; <u>see</u>

also <u>Amick v. BM & KM, Inc.</u>, 275 F. Supp. 2d 1378, 1381 (N.D. Ga. 2003).  If the complaint as amended still fails to state a claim for relief, the requested amendment is futile and should be denied.  <u>Hall v. United Ins. Co. of Am.</u>, 367 F.3d 1255, 1262-63 (11th Cir. 2004).

The Court has no justifying reason to deny Plaintiff's amendments to its claims for fraud and breach of fiduciary duty.  The amended complaint is therefore granted as to the fraud and breach of fiduciary duty claims so that the Court may consider Plaintiff's amended allegations in evaluating the Defendants' motions to dismiss.

Plaintiff's amended complaint also attempts to assert a new claim against the Underwriters for penalties, including attorney's fees, on the Underwriters' alleged bad faith refusal to fulfill obligations under the Insurance Policy.[4]  Amend. Compl. ¶¶ 74-79.  The Underwriters oppose the new claim because they argue it is barred. The Court agrees.[5]

---

[4]  The Court notes that Plaintiff's litigation strategy seems to be to assert any claim which might put Defendants at risk for damages beyond those for an alleged breach of the Insurance Policy.

[5]  The Insurance Policy includes in its Commercial Property Conditions: "No one may bring a legal action against us under this Coverage Part unless . . . [t]he action is brought within 2 years after the date on which the direct physical loss or

The Underwriters argue that the addition of a bad faith claim violates Georgia law.  Under O.C.G.A. § 33-4-6, "[i]n the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer."

Georgia courts have consistently and unequivocally held that "in order to assert a claim under OCGA § 33-4-6, the demand for payment be made at least 60 days *before suit is filed*."  Cagle v. State Farm Fire & Cas. Co., 512 S.E.2d 717, 718 (Ga. App. 1999) (emphasis added); accord Howell v. S. Heritage Ins. Co., 448 S.E.2d 275, 276 (Ga. App. 1994); Stedman v. Cotton States Ins. Co., 562 S.E.2d 256, 258-59 (Ga. App. 2002); Primerica Life Ins. Co. v. Humfleet, 458 S.E.2d 908, 910 (Ga. App. 1995).  The section imposes a penalty on insurers who refuse in bad faith, after appropriate demand and a 60-day notice period, to pay valid claims.

---

damage occurred."  Underwriters' Resp. to Mot. to Amend [19], Exh. B at 31 of 55.  The Underwriters do not contest that this suit was originally filed within the limitations period.

-10-

"'As the section imposes a penalty, it is strictly construed; consequently, a proper demand for payment is essential to recovery.'" Cagle, 512 S.E.2d at 718 (quoting Howell, 448 S.E.2d at 276).

Plaintiff admits it first demanded payment and notified the Underwriters of its intention to pursue a bad faith claim on June 26, 2007, only ten days before Plaintiff filed this action without a bad faith claim.  The law in Georgia is clear. Plaintiff's decision to file suit without a bad faith claim less than sixty days after demanding payment bars a bad faith claim under O.C.G.A. § 33-4-6.  Cagle, 512 S.E.2d at 718 (bad faith claim barred where plaintiff sent demand for payment on the same day it filed suit); Mass. Mut. Life. Ins. Co. v. Montague, 10 S.E.2d 279, 285-86 (Ga. App. 1940) (action under insurance policy cannot be amended to assert a bad faith claim under the prior version of O.C.G.A. § 33-4-6 where notice was sent 33 days before suit was filed); Stedman, 562 S.E.2d at 258-59 (plaintiff was not entitled to maintain a bad faith claim where demand was not made sixty days before suit on the policy was filed).  Plaintiff's motion for leave to amend is denied as to the addition of the bad faith claim because the amendment would be futile.[6]

_____

[6] The presence of a contractual limitations period does not change this result.  Georgia courts require that plaintiffs assert bad faith claims within the

C.    **The Motions to Dismiss**

Both the Underwriters and Totura move to dismiss the breach of fiduciary duty and fraud claims.  In all material respects, the two motions duplicate each other.  The Court therefore considers both together.

1.    **Breach of Fiduciary Duty Claims**

The Underwriters and Totura contend that Plaintiff's breach of fiduciary duty claims must fail because insurers in Georgia categorically do not owe fiduciary duties to their insureds.  The Court agrees.

The relationship between insurers and insureds ordinarily is governed by the insurance contract between them.  Breach of contract does not normally constitute a tort.  Leonard v. Firemen's Ins. Co., 111 S.E.2d 773, 775 (Ga. App. 1959); Hanson v. Aetna Life & Cas., 625 F.2d 573, 575 (5th Cir. 1980).[7]  "An exception exists, however, where there is a special relationship between the parties that

_____

limitations period imposed by an insurance agreement.  E.g., Cagle, 512 S.E.2d at 719 ("[N]othing in the case law suggests that there is an equitable exception to the 60-day rule if the lawsuit is filed shortly before the expiration of a limitation period.").

[7] Decisions of the former Fifth Circuit decided prior to October 1, 1981 are binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

creates an independent duty." Arrow Exterminators, Inc. v. Zurich Am. Ins. Co., 136 F. Supp. 2d 1340, 1354 (N.D. Ga. 2001).

In Georgia, the existence of a "confidential relationship" can create independent duties, the breach of which may constitute a tort. Monroe v. Board of Regents of the Univ. Sys. of Ga., 602 S.E.2d 219, 222 (Ga. App. 2004). Georgia defines a "confidential relationship" as: "[a]ny relationship . . . whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." O.C.G.A. § 23-2-58. The party asserting the existence of a "confidential relationship" bears the burden of establishing its existence. Monroe, 602 S.E.2d at 222.

Georgia courts have repeatedly and consistently held that the insurer-insured relationship does not itself impose fiduciary responsibilities upon the insurer. Walsh v. Campbell, 202 S.E.2d 657, 661 (Ga. App. 1973); State Farm Fire & Cas. Co. v. Fordham, 250 S.E.2d 843, 845 (Ga. App. 1978); Tate v. Aetna Cas. & Surety Co., 253 S.E.2d 775, 777 (Ga. App. 1979); Monroe, 602 S.E.2d at 222;

Nash v. Oh. Nat. Life. Ins. Co., 597 S.E.2d 512, 518 (Ga. App. 2004); Am. Gen. Life Ins. & Accident Ins. Co. v. Ward, 509 F. Supp. 2d 1324, 1331 (N.D. Ga. 2007).  The relationship between the two parties is governed instead by the insurance agreement.

Georgia courts allow an insured to sue for breach of fiduciary duty only if he "sustains damages other than damages covered by the insurance contract." Delancy v. St. Paul Fire & Marine Ins. Co., 947 F.2d 1536, 1546 (11th Cir. 1991) (internal quotation marks omitted).  The parties have identified, and the Court has independently confirmed, only one circumstance where Georgia courts allow tort actions for breach of fiduciary duties between an insured and his insurer: the insurer owes fiduciary duties of good faith when defending or settling a third-party claim on behalf of the insured.  E.g., Thomas v. Atlanta Cas. Co., 558 S.E.2d 432, 438-39 (Ga. App. 2001); Arrow Exterminators, 136 F. Supp. 2d at 1354 ("This special exception most commonly arises in the insurance context in those situations where an insurer refuses to settle a claim.").

The general rule, and not the exception, applies in this case.  Plaintiff alleges that it was insured by the Underwriters.  After the insured property sustained damage, Plaintiff contacted the Underwriters for coverage under the Insurance

-14-

Policy.  Construing the allegations in the light most-favorable to Plaintiff, the

Underwriters sent their agent Totura to adjust the loss, and Totura recommended

that IAC perform repair work under the Insurance Policy.  Plaintiff admits that it

specifically authorized IAC to perform repair work.  The work was eventually

performed, IAC was paid out of insurance proceeds, and now Plaintiff complains

that its property has not been returned to serviceable condition.  This case is not

fundamentally different from the situation where an insured claims a loss which is

then adjusted by the insurer and paid under the policy.  First party loss situations

are exactly the type of insurer-insured relationships where Georgia courts have

consistently refused to find the existence of fiduciary duties.  E.g., Arrow

Exterminators, 136 F. Supp. 2d at 1355 ("[B]ased on the general rule precluding

tort liability and the Georgia courts [sic] determination in Tate[ v. Aetna Cas. &

Surety Co., 253 S.E.2d at 777] that the incompetency of adjusters and processors

does not fall within the special exception, the Court must grant summary judgment

in favor of [the insurer] . . . .").

    Plaintiff suggests that the Underwriters' and Totura's alleged "control" of

Plaintiff's insurance proceeds creates a fiduciary relationship.  It does not.

Payment to IAC out of Plaintiff's policy does not establish a special or confidential

relationship between Plaintiff and the Underwriters or Totura.  Under the Insurance Policy, Plaintiff was entitled to a certain amount of coverage on their losses.  If it believes payments were misapplied or mismanaged, Plaintiff may seek redress under the Insurance Policy.  The claim is one for breach of contract, not for breach of fiduciary duty.  Plaintiff's breach of fiduciary duty claims against the Underwriters and Totura are dismissed.

### 2.    Fraud Claims

The Underwriters and Totura argue Plaintiff's fraud allegations are inadequately plead.  The Federal Rules of Civil Procedure set forth heightened standards for fraud pleading, requiring that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).  This requirement is satisfied if the complaint sets forth "(1) precisely what statements . . . or what omissions were made, and; (2) the time and place of each such statement and the person responsible for making [them]; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud." Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir.

1997) (internal citations and quotations omitted); <u>accord</u> <u>Ambrosia Coal & Constr.</u>

<u>Co. v. Pages Morales</u>, 482 F.3d 1309, 1316-17 (11th Cir. 2007).  "Because fair

notice is perhaps the most basic consideration underlying Rule 9(b), the plaintiff

who pleads fraud must reasonably notify the defendants of their purported role in

the scheme."  <u>Brooks</u>, 116 F.3d at 1381 (internal quotations and citations omitted).

"[I]n a case involving multiple defendants . . . the complaint should inform each

defendant of the nature of his alleged participation in the fraud."  <u>Id.</u>  (internal

citations omitted).  Pleadings are insufficient where they simply lump together all

defendants and are "devoid of specific allegations with respect to the separate

Defendants."  <u>Id.</u>

     Under Georgia law, the tort of fraud requires that the plaintiff prove five

elements: (1) a false representation by the defendant; (2) scienter; (3) intention to

induce reliance by the plaintiff; (4) justifiable reliance by the plaintiff; and (5)

damages.  <u>J.E. Black Constr. Co., Inc. v. Ferguson Enters., Inc.</u>, 643 S.E.2d 852,

854 (Ga. App. 2007).  Georgia also recognizes constructive fraud, whereby the

defendant may be held liable if he fails to disclose information he was under a

legal or equitable duty to disclose.  <u>Eason Pubs., Inc. v. NationsBank of Ga.</u>, 458

S.E.2d 899, 903 (Ga. App. 1995); O.C.G.A. § 23-2-51(b) ("Constructive fraud

consists of any act of omission or commission, contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another."). Plaintiffs alleging constructive fraud must also show each of the five elements for fraud claims. Eason, 458 S.E.2d at 903.

The Underwriters and Totura argue that each allegedly fraudulent statement or omission is either not plead with particularity or is premised upon disclosure obligations which do not exist. Plaintiff's amended complaint alleges the following fraudulent statements or omissions:

1. On July 27, 2005, Mr. Sindone falsely represented, allegedly with Totura's knowledge and assent, that Prime Management's losses were covered under the Insurance Policy.

2. On August 11, 2005, Mr. Danner fraudulently failed to disclose to Plaintiff that IAC was Plaintiff's contractor, not the Underwriters' contractor.[8]

3. On and after October 18, 2005, Totura and the Underwriters fraudulently failed to disclose IAC's invoice to Prime Management.

---

[8] The Underwriters dispute that an agency relationship existed between them and Mr. Danner such that the Underwriters could be held liable for Mr. Danner's allegedly fraudulent conduct, yet the Underwriters admit they must accept Plaintiff's allegations as true at this stage. Underwriters' Mot. to Dismiss [3] at 16.

4.      On October 20, 2005, Mr. Danner falsely represented to Mr. Charania that Totura had not received an invoice from IAC.

5.      On October 24, 2005, December 20, 2005, January 4, 2006, and January 25, 2006, Prime Management requested in writing to Totura that it disclose information about any payments made to IAC. The Underwriters and Totura did not disclose any payments.

6.      On November 6, 2005, Mr. Sindone misrepresented to Mr. Charania that IAC had not yet received payment from the Underwriters.

Plaintiff has simply failed to sufficiently allege any claims for fraud. The allegations in subparagraphs 1 and 2 above offer only conclusory allegations that Mr. Sindone and Mr. Danner made false representations and omissions about the scope of the Insurance Policy and the relationship between IAC and Plaintiff. Plaintiff does not allege, however, any facts showing why those representations and omissions were false. Indeed, facts alleged in the Complaint show the contrary: that most, if not all, of Prime Management's losses were covered under the Insurance Policy, and that IAC was Plaintiff's contractor (evidenced by the Authorization to Proceed). The Court will not speculate as to what is fraudulent about subparagraphs 1 and 2 without greater specificity from Plaintiff. As to

-19-

subparagraphs 3, 5, and 6, Plaintiff has not alleged that the Underwriters and

Totura had any obligation to disclose the information mentioned in the

subparagraphs.  To the extent the Underwriters or Totura breached any contractual

obligations to Plaintiff, Plaintiff may pursue a breach of contract action, not claims

for fraud.  A critical review of the claims in subparagraphs 1, 2, 3, 5, and 6 shows

that Plaintiff failed to even allege representations or omissions that were false.  The

allegations in those subparagraphs do not sufficiently state claims for fraud.  J.E.

Black, 643 S.E.2d at 854.

As to the allegation in subparagraph 4, Plaintiff has alleged a specific

affirmative misrepresentation by Mr. Danner that does not satisfy each element of a

fraud claim.  The only allegations in the Complaint concerning intention to induce

reliance, actual reliance, and damages are as follows: "Upon information and

belief, Defendants [sic] misrepresentations and concealments were made with the

intention of inducing reliance by Prime Management, and Prime Management

justifiably relied upon Defendants' misrepresentations and concealments . . . . As a

result of Defendants' fraudulent misrepresentations and concealments, Prime

Management has been damaged in an amount to be proved at trial."  Compl. ¶¶ 63-

64.  Conclusory allegations reciting the elements of a claim, without any facts

supporting why those elements are satisfied, do not suffice to state a claim for fraud. <u>Watts v. Fla. Int'l. Univ.</u>, 495 F.3d 1289, 1295-96 (11th Cir. 2007). Rule 9(b) requires factual allegations to contain even greater particularity. <u>WESI, LLC v. Compass Envtl., Inc.</u>, 509 F. Supp. 2d 1353, 1358-59 (N.D. Ga. 2007).

Plaintiff has not pleaded how it relied on Mr. Danner's alleged statement or how the statement damaged it in any way. Compl. ¶¶ 63-64. Plaintiff also offers only a conclusory allegation that, "[i]f Prime Management had been given the opportunity to review the invoice submitted by IAC, as had been agreed with both IAC and Totura, Prime Management would have identified the overcharge." Compl. ¶ 33. Plaintiff does not allege any facts showing how it actually relied on the statement or how, had Plaintiff known of the invoice from IAC, it could have prevented damage to itself.

The Court normally grants one additional chance to amend before dismissing claims with prejudice. <u>Bryant</u>, 252 F.3d at 1163. Plaintiff may have thirty (30) days to file a second amended complaint which seeks to correct the fraud claim pleading deficiencies identified in this Order.[9]

---

[9] Based on the pleadings and briefing to date, the Court notes that a fraud claim is likely not appropriate in this case. Plaintiff is reminded of its pleading obligations under Rule 11 of the Federal Rules of Civil Procedure.

### III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Underwriters' Motion to Dismiss [3] is **GRANTED.**

**IT IS HEREBY FURTHER ORDERED** that Totura's Motion to Dismiss [28] is **GRANTED**.

**IT IS HEREBY FURTHER ORDERED** that Plaintiff's Motion for Leave to Amend [11] is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff shall have up to and including January 28, 2008 to file a second amended complaint in order to adequately plead its alleged fraud claims.  If Plaintiff files a second amended complaint, Plaintiff must also submit a red-lined version clearly showing the changes between the first and second amended complaints.

**SO ORDERED** this 28th day of December 2007.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE